UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-8566-CIV-RYSKAMP

DAVID M. LEVINE, not individually,
but solely in his capacity as Receiver
for SUNSTATE FX, INC.,

        Plaintiff,

vs.

TRANQUIL OPTIONS, LLC, a
Colorado Limited Liability Company,
PEACEFUL OPTIONS, LLC, a
Colorado Limited Liability Company,
SERENITY OPTIONS, LLC, a
Colorado Limited Liability Company,
and RESERVE FOUNDATION, LLC,
a Colorado Limited Liability Company,

        Defendants.

_____/



FILED by _____ D.C.

MAR - 5 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER GRANTING RECEIVER'S MOTION FOR FINAL SUMMARY JUDGMENT AND IMPOSITION OF CONSTRUCTIVE TRUST AND/OR EQUITABLE LIEN

THIS CAUSE came before the Court upon plaintiff, David M. Levine's, Motion for Final

Summary Judgment and Imposition of Constructive Trust and/or Equitable Lien (the "Motion for

Final Summary Judgment"), filed on February 9, 2004, against defendants, Reserve Foundation,

LLC ("Reserve"), Tranquil Options, LLC ("Tranquil"), Peaceful Options, LLC ("Peaceful"), and

Serenity Options, LLC ("Serenity") (collectively, "Defendants"). The Court has reviewed the record

and the applicable law, and considers the Motion ripe for adjudication.

## I. BACKGROUND

On April 18, 2001, this Court entered an order in a related case, styled *Securities and Exchange Commission v. SunState FX, Inc., Ulrich G. Garbe, Peggy L. Patterson and John J. Hyland*, Case No. 01-8328 CIV-RYSKAMP, which, *inter alia*, appointed David M. Levine as receiver (the "Receiver") to administer the affairs of SunState FX, Inc. ("SunState"), a corporation engaged in a fraudulent Ponzi scheme, and authorized the Receiver to institute actions to recover investors' monies improperly diverted from SunState to insiders and others. Shortly thereafter, the Receiver brought this action to recover $3.5 million improperly diverted from SunState to Tranquil, Peaceful, and Serenity and used to purchase the Colorado real property known as the Redstone Castle. The Receiver thereafter moved for Final Summary Judgment to obtain title to the Redstone Castle, to impose a constructive trust and/or an equitable lien on the Redstone Castle, and for other relief, given Tranquil, Peaceful, and Serenity's acquisition of the Redstone Castle with $3.5 million derived entirely from SunState investors. The Redstone Castle is located in Redstone, Colorado (58 Redstone Boulevard, Redstone, Colorado 81623), and is more particularly described as follows in Exhibit A, attached hereto.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) sets forth the standard governing summary judgment. In its most basic form, summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

2

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations; rather, the opposing party must adduce some evidence showing that material facts are in issue. *Anderson*, 477 U.S. at 256. "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Eleventh Circuit has restated the method for allocating burdens in a summary judgment motion. Specifically, in accordance with U.S. Supreme Court precedent:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

## III. DISCUSSION

The Receiver seeks Final Summary Judgment on all counts of the Amended Complaint directed towards the Redstone Castle – Count I (for fraudulent transfer), Count II (for conversion), Count III (for unjust enrichment), Count IV (for constructive trust), and Count V (for equitable lien). The Receiver contends, based on his own uncontroverted declaration, the uncontroverted declaration of his forensic accountant, Soneet R. Kapila, and the uncontroverted declaration of his fraud and money-laundering expert, Charles C. Harper, that there is no genuine issue of fact that Tranquil,

Peaceful, and Serenity received $3.5 million derived from SunState investors' monies and used it to purchase the Redstone Castle, and thus $3.5 million of the Redstone Castle was purchased with SunState investors' monies. This Court agrees.

Regarding the Receiver's claim for fraudulent transfer, a fraudulent transfer occurs when a party makes a transfer with intent to "hinder, delay, or defraud" a creditor or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer[.]" Fla. Stat. § 726.105(1)(a), (b). Once a court determines that a transfer was fraudulent (as it must with an entity operating a Ponzi scheme), and is therefore voidable, the court must determine whether the recipient of the transfer took the transfer "in good faith" and for "reasonably equivalent value." *In re World Vision Entm't*, 275 B.R. 641, 656, 658 (Bankr. M.D. Fla. 2002); *Babbit Elecs., Inc. v. Dynascan Corp.*, 915 F. Supp. 335, 337-38 (S.D. Fla. 1995). Importantly, because money is fungible, including transfers of money, once monies are commingled, funds acquired illicitly are indistinguishable from funds acquired legitimately. *See United States v. Abbell*, 271 F.3d 1286, 1296 n.5 (11th Cir. 2001).

Here, SunState operated a Ponzi scheme and transferred $3.5 million to Tranquil, Peaceful, and Serenity, which they used to purchase the Redstone Castle. Tranquil, Peaceful, and Serenity performed no due diligence on SunState, and thus did not take the transfer in good faith, and provided no consideration for the transfer, and thus did not take the transfer for reasonably equivalent value. Reserve's $6 million sent to SunState was commingled with all other investor monies, and thus when SunState sent $3.5 million to Tranquil, Peaceful, and Serenity, which they used to purchase the Redstone Castle, that amount constituted commingled funds derived from SunState investors.

Regarding the Receiver's claim for imposition of a constructive trust on the Redstone Castle,

4

a constructive trust is appropriate on real property, including a homestead, when the party seeking its imposition can trace funds used to purchase the property to a fraud. *See In re Gherman*, 103 B.R. 326, 332-33 (Bankr. S.D. Fla. 1989) (imposing a constructive trust on homes, in amount traceable to fraud, purchased with converted funds from fraudulent transfers). Likewise, an equitable lien is proper on real property, including a homestead, when the party seeking its imposition can trace funds used to purchase the property to a fraud. *See In re Lapes*, 254 B.R. 501, 507-08 (Bankr. S.D. Fla. 2000) (imposing equitable lien on home, in amount traceable to fraud, purchased with funds from fraudulent transfers).

The Receiver has established that (i) SunState was operating as a fraudulent Ponzi scheme, commingling investors' monies together; (ii) Reserve sent $6 million to SunState and this transfer was commingled with other investors' monies; (iii) SunState transferred $3.5 million to Tranquil, Peaceful, and Serenity to purchase the Redstone Castle; (iv) the $3.5 million represents SunState commingled investor funds; and (v) Tranquil, Peaceful, and Serenity provided no value – and were not in good faith – in respect of the transfer. In other words, the Receiver has traced $3.5 million of Tranquil, Peaceful, and Serenity's acquisition of the Redstone Castle to the SunState fraud. Accordingly, equity dictates that this Court impose a constructive trust and an equitable lien on the Redstone Castle in the amount of $3.5 million for the benefit of SunState's investors.

Regarding the Receiver's claim for conversion, Tranquil, Peaceful, and Serenity wrongfully and permanently deprived SunState's investors of their property without their authorization, and thus improperly converted SunState funds, when SunState transferred $3.5 million to Tranquil, Peaceful, and Serenity for their purchase of the Redstone Castle. *See Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001) (affirming grant of summary judgment for conversion claim when

5

defendant, without authorization, transferred stock and thereby deprived plaintiffs of their property).

Similarly, Tranquil, Peaceful, and Serenity were unjustly enriched when SunState transferred $3.5 million, a substantial benefit, to them, and which they accepted and retained, to purchase the Redstone Castle; Tranquil, Peaceful, and Serenity accepted and retained this substantial benefit to the detriment of SunState's defrauded investors. *See Metro. Life Ins. Co. v. Solomon*, 996 F. Supp. 1473, 1477-78 (M.D. Fla. 1998) (granting summary judgment for unjust enrichment claim when defendant received benefit of mistakenly issued check and allowing defendant to retain check would have been inequitable).

Notwithstanding the evidence that the Receiver submitted regarding his claims for fraudulent transfer, conversion, unjust enrichment, constructive trust, and equitable lien, which, *in and of itself,* merits final summary judgment, summary judgment is also appropriate because this Court, pursuant to its Order Drawing Negative Inference dated January 20, 2004, drew a negative inference against Tranquil, Peaceful, and Serenity (and Reserve) regarding the Receivers's allegations of fraudulent transfer, conversion, unjust enrichment, constructive trust, and equitable lien. This negative inference arose from Defendants' deliberate failure to provide permissible (and necessary) discovery.

Norm Schmidt ("Schmidt"), as the Rule 30(b)(6) designee on behalf of all four corporate Defendants, invoked the Fifth Amendment privilege against self-incrimination during Defendants' depositions for every substantive question regarding SunState, Reserve, Tranquil, Peaceful, and Serenity. This was improper, as corporations have no Fifth Amendment right. *See Braswell v. United States*, 487 U.S. 99, 103 (1988).

The Defendants were thereafter obligated to designate another corporate representative who would not invoke the Fifth Amendment during the 30(b)(6) deposition. *See Worthington Pump*

6

*Corp. (U.S.A.) v. Hoffert Marine, Inc.*, No. Civ.A. 79-3531, 1982 WL 308871, at *2 (D.N.J. Feb. 19, 1982). However, Defendants failed to designate another corporate representative. Therefore, given Defendants' failure to provide discovery, this Court, in its January 20, 2004 Order, drew a negative inference against Defendants regarding <u>all</u> the allegations of the Receiver's Amended Complaint. *See Order Drawing Negative Inference; see also United States v. A Single Family Residence and Real Prop. Located at 900 Rio Vista Blvd., Ft. Lauderdale*, 803 F.2d 625, 630 n.4 (11th Cir. 1986) (district court properly drew negative inference against corporate defendant when designated corporate representative invoked Fifth Amendment during 30(b)(6) deposition).

      This negative inference, combined with the Receiver's submitted evidence, establishes that there are no genuine issues of material fact and final summary judgment is appropriate against Defendants on all of the Receiver's claims. *See BankAtlantic v. Coast to Coast Contractors, Inc.*, 22 F. Supp. 2d 1354, 1358-59 (S.D. Fla. 1998) (granting summary judgment in favor of plaintiffs when they submitted substantial evidence and defendant invoked Fifth Amendment); *United States v. Two Parcels of Real Prop.*, 868 F. Supp. 306, 311 (E.D. Ala. 1994) (granting summary judgment based on probative evidence and inference that because defendants invoked Fifth Amendment, their testimony "would not have been favorable to their position").

      In summary, Tranquil, Peaceful, and Serenity obtained the Redstone Castle through questionable means. Equity, in good conscience, leads to the inescapable conclusion that Tranquil, Peaceful, and Serenity not be permitted to retain title to the Redstone Castle at the expense of SunState's defrauded investors. There is no just reason for delay because the Receiver seeks to expedite the finality of the Final Summary Judgment granted herein in order to liquidate the Redstone Castle for the benefit of SunState's defrauded investors. *See Bank of Lincolnwood v. Fed.*

*Leasing, Inc.*, 622 F.2d 944, 947 (7th Cir. 1980).

## IV. CONCLUSION

THE COURT has considered the Motion (including the sworn Declarations and the Exhibits attached thereto), the applicable law, and the pertinent portions of the record, and being fully advised in the premises, it is ORDERED AND ADJUDGED that:

1.  The Receiver's Motion for Final Summary Judgment is hereby **GRANTED**.

2.  The transfer of the $3.5 million to Defendants Tranquil, Peaceful, and Serenity is hereby set aside and avoided for the benefit of the SunState receivership estate.

3.  The Receiver is hereby granted judgment against Defendants jointly and severally in the amount of $3,500,000.00 plus interest, from May 16, 2000, the date of the transfer, at the rate of 10 % for 2000, 11 % for 2001, 9 % for 2002, 6 % for 2003, and 7 % for 2004, in the amount of $1,155,791.70, for a total of $4,655,791.70 (plus costs to be taxed upon separate motion), for which let execution issue forthwith.

4.  The Redstone Castle, located at 58 Redstone Boulevard, Redstone, Colorado 81623, the full legal description of which is set forth in attached Exhibit A, is hereby impressed with a constructive trust and an equitable lien in favor of SunState's investors. The Receiver is hereby deemed vested as of the date of this Order with title to the Redstone Castle for the benefit of SunState's investors, and any or all persons or entities, including Defendants, in possession, custody, or control, or who holds title to the Redstone Castle, shall relinquish same immediately to the Receiver, thereby extinguishing title in their names. The Receiver is further authorized, to the extent necessary, to institute legal proceedings in the State of Colorado to effectuate the terms of this Order (including foreclosure proceedings).

Final Summary Judgment shall be entered by separate order entered contemporaneously herewith in favor of the Receiver and against Defendants on all counts, Counts I through and including V, of the Receiver's Amended Complaint. Pursuant to that Final Summary Judgment, Defendants shall immediately vacate the Redstone Castle and transfer title, thereby extinguishing title in their names, to David M. Levine, as the Court-appointed Receiver for SunState FX, Inc., to be sold for the benefit of SunState's investors.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 5 day of March, 2004.

HONORABLE KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Jeffrey C. Schneider, Esq.
Harvey A. Steinberg, Esq.

Martin J. O'Fallon,
Registered Agent, Peaceful Options, LLC and Serenity Options, LLC

Norman Schmidt,
Registered Agent, Tranquil Options, LLC and Reserve Foundation, LLC

::ODMA\MHODMA\MIAMI;395498;1

9

PARCEL A: (Castle Parcel)

A parcel of land situated in Southeast one-quarter Southwest one-quarter (SEI/4SW1/4) and in the Southwest one-quarter Southeast one-quarter (SWl/4SE1/4) of Section 20 and in the Northeast one-quarter Northwest one-quarter (NE1/4NW1/4), in the Northwest one-quarter Northeast one-quarter (NWS/4NE1/4) , and in the Southwest one-quarter Northeast one-quarter (SW1/4NE1/4) of Section 29, all in Township 10 south. Range 88 West of the 6th Principal Meridian, Pitkin County, Colorado, said parcel being more particularly described as follows:

Beginning at the Center of said Section 29;
thence North 00°06' West, 1,316.69 feet along the North-South centerline of Section 29 to the Southeast Corner of the Northeast one-quarter Northwest one-quarter (NE1/4NW1/4) of said Section 29;
thence South 89.41' West, 721.34 feet along the Southerly boundary line of the Northeast one-quarter Northwest one-quarter (NEl/4NW1/4) of said Section 29 to a point in the center of the Crystal River;
thence North 49°02'02" East, 339.50 feet along the center of said River;
thence.North 11°24'06" West, 812.33 feet along the center of said river,
thence North 34°08'21" East, 295:94 feet;
thence North 12°46'23" East, 431.44 feet;
thence North 17°10'57" West, 180.49 feet;
thence south 54°59'32" East, 927.63 feet to a point on the Northerly boundary line of the Northwest one-quarter Northeast one-quarter (NW1/4NE1/4) of said Section 29;
thence North 89°38' East, 493.34 feet along said Northerly boundary line;
thence South 2,638.84„feet to a point on the East-West centerline of said Section 29;
thence South_ 89°44' West, 838.41 feet along said East-West centerline to the Center of said Section 29, the Point of Beginning.

TOGETHER WITH

PARCEL D:

ACCESS EASEMENT (CLEVEHOLM MANOR PARCEL TO REDSTONE BOULEVARD)

A 30 foot wide access easement situated in the NW1/4 SE1/4 and in



EXHIBIT

A

the E1/2 SW1/4 of Section 20, Township 10 South, Range 89 West of
the 6th Principal Meridian, Pitkin County, Colorado, and lying 15
feet on each side of the following described centerline:

Beginning at a point whence a stone found in place for the witness
Corner to the Southwest Corner of said Section 20 bears S 78°33'34"
W 2278.67 feet;
thence N 15°12'47" W 25.64 feet;
thence N 19°15'22" W 53.09 feet;
thence N 12°28'46" W 39.19 feet;
thence N 09°56'28" W 106.16 feet;
thence N 07°05'31" W 25.92 feet;
thence N 13°31'54" E 26.10 feet;
thence N 36°17'41" E 50.08 feet;
thence N 26°35'38" E 50.35 feet;
thence N 15°21'48" E 35.29 feet;
thence N 10°13'11" E 80.34 feet;
thence N 05°41'34" W 92.25 feet;
thence N 03°31'15" W 63.31 feet;
thence N 21°38'48" E 162.46 feet;
thence N 31°34'37" E 106.30 feet;
thence N 39°11'43" E 34.57 feet;
thence N 29°59'38" E 64.06 feet;
thence N 21°19'55" E 83.26 feet;
thence N 25°42'19" E 81.91 feet;
thence N 19°10'30" E 72.17 feet;
thence N 01°03'52" W 231.13 feet;
thence 117.84 feet along the arc of a curve to the right, having aa
radius of 112.29 feet, the chord of which bears N 29°00'04" E
112.51 feet; and continuing on the existing 30 foot wide access
easement previously recorded as described to wit;

Beginning at a point in the NW1/4 SE1/4 of said Section 20 whence
a stone found in place and properly marked for the Witness Point to
the Southwest Corner of said Section 20 bears: S 52°53'19" W
3224.57 feet;
thence along said centerline, N 59°04'Cl" E 187.16 feet;
thence 136.84 feet along the arc of a curve to the left, having a
radius of 263.57 feet, the chord of which bears N 44°11.35" E
135.31 feet;
thence N 29°19'10" E 372.52 feet;
thence 139.58 feet along the arc of a curve to the right, having a
radius of 740.33 feet, the chord of which bears: N 34°43'15" E
139.39 feet;
thence N 40°07'20" E 193.61 feet;

thence 191.24 feet along the arc of a curve to the left, having a radius cf 264.95 feet, the chord of which bears: N 19°26'41" E 187.12 feet;

thence N 01013'59" W 135.97 feet;

thence 290.76 feet along the arc of a curve to the left, having a radius cf 479.72 feet, the chord of which bears: N 18°35'49" W 286.33 feet;

thence N 35 57'37" W 183.53 feet;

thence 291.64 feet along the arc of a curve to the right, having the radius of 505.69 feet, the chord of which bears: N 19°26'23" W 237.61 feet;

thence N 02°55'00" W 203.00 feet;

thence 149.57 feet along the are of a curve to the left, having a radius of 809.76 feet, the chord of which bears : N 08°12'30" W 149.36 feet;

thence N 13°30'00" W 8.07 feet, more or less, to a point on the Southerly right-of-way line of the Redstone Road.

PARCEL B: (Carriage Rouse Parcel)

A tract of land situated in the SE1/4 SW1/4 land in the SW1/4SE1/4 of said Section 20 and said NW1/4 NE1/4 and SW1/4 NE1/4 of Section 29, all in Township 10 South, Range 88 West of the 6th Principal Meridian, Pitkin County, Colorado, and being more particularly described as follows: Beginning at a point on the boundary line between said SW1/4 SE1/4 of said Section 20 and said NW1/4 NE1/4 of said Section 29 whence a stone found in place for the Witness Corner to the Northwest Corner of said Section 29 (also being the Southwest Corner of said Section 20) bears S 89°38' W 2852.68 feet; thence N 54°59'32" W 927.62 feet;
thence N 85°01'19" E 667.80 feet to a road intersection as built; thence S 59°48'31" E 1161.86 feet;
thence South 2639.56 feet to a point on the East-West centerline of said Section 29;
thence S 89°44, W 411.43 feet along said East-West centerline; thence North 2638.84 feet to a point on the boundary line between said Section 20 and 29;
thence S 89°38' W 498.34 feet along said boundary line to the point of beginning.

TOGETHER WITH

PARCEL D:

ACCESS EASEMENT (CLEVEHOLM MANOR PARCEL TO REDSTONE BOULEVARD)

A 30 foot wide access easement situated in the NW1/4 SE1/4 and in the E1/2 SW1/4 of Section 20, Township 10 South, Range 88 West of the 6th Principal Meridian, Pitkin County, Colorado, and lying 15 feet on each side of the following described centerline:

Beginning at a point whence a stone found in place for the Witness Corner to the Southwest Corner of said Section 20 bears S 78°33'34" W 2278.67 feet;
thence N 15°12'47" W 25.64 feet;
thence N 19°15'22" W 53.09 feet;
thence N 12°28'46" W 39.19 feet;
thence N 09°56'28" W 106.16 feet;
thence N 07°05'31" W 25.92 feet;
thence N 13°31'54" E 26.10 feet;
thence N 36°17'43" E 50.08 feet;
thence N 26°35'38" E 50.35 feet;
thence N 15°21'48" E 35.29 feet;

thence N 10°13'11" E 80.34 feet;
thence N 05°41'34" W 92.25 feet;
thence N 03°37'15" W 63.37 feet;
thence N 21°38'48" E 162.46 feet;
thence N 31°34'37" E 106.30 feet;
thence N 39°11'43" E 34.57 feet;
thence N 29°59'38" E 64.06 feet;
thence N 21°19'55" E 83.26 feet;
thence N 25°42'19" E 81.91 feet;
thence N 19°10'30" E 72.17 feet;
thence N 01°03'52" W 231.13 feet;
thence 117.84 feet, along the arc of a curve to the right, having
a radius of 112.29 feet, the chord of which bears N 29°00'04" E
112.51 feet; and continuing on the existing 30 foot wide access
easement previously recorded as described to wit:
Beginning at a point in the NW1/4 5E1/4 of said Section 20 whence
a stone found in place and properly marked for the Witness Point to
the Southwest Corner of said Section 20 bears: S 52°53'19" W
3224.57 feet;
thence along said centerline, N 59°04'01" E 187.16 feet;
thence 136.84 feet along the arc of a curve to the left, having a
radius of 263.57 feet, the chord of which bears N 44°11'35" E
135.31 feet;
thence N 29°19'10" E 372.52 feet;
thence 139.58 feet along the arc of a curve to the right, having a
radius of 740.333 feet, the chord of which bears: N 34°043.15" E
139.38 feet;
thence N 40°07'20" E 183.61 feet;
thence 191.24 feet along the arc of a curve to the left, having a
radius of 264.95 feet, the chord of which bears: N 19°26'41" E
187.12 feet;
thence N 01°13'59" W 135.97 feet;
thence 290.76 feet along the arc of a curve to the left, having a
radius of 479.72 feet, the chord of which bears: N 18°35'49" W
286.33 feet;
thence N 35°57'37" W 183.53 feet;
thence 291.64 feet along the arc of a curve to the right, having
the radius of 505.69 feet, the chord of which bears: N 19°26'23" W
287.61 feet;
thence N 02°55'00" W 203.00 feet;
thence 149.57 feet along the arc of a curve to the left, having a
radius of 809.76 feet, the chord of which bears: N 08°12'30" W
149.36 feet
thence N 13°30'00" W 8.07 feet, more or less, to a point on the
Southerly right-of-way line of the Redstone Road.

PARCEL C: (Barn Parcel)

A tract of land situated in the E1/2 SW1/4 and in the W1/2 SE1/4 of Section 20, Township 10 South, Range 88 West of the 6th Principal Meridian, Pitkin County, Colorado, and being more particularly described as follows:

Beginning at a point whence a stone found in place for the Witness Corner to the Southwest Corner of said Section 20 bears S 75°15'53" W 2164.01 feet;
thence S 79°09'36" E 128.71 feet;
thence N 28°33'26" E 105.14 feet;
thence N 12°30'11" E 54.24 feet;
thence N 23°34'12" E 119.92 feet to a point in the centerline of a roadway as built and in place;
thence along the centerline of said roadway on the following courses: N 03°37'15" W 37.69 feet;
thence N 21°38'48" E 162.46 feet;
thence N 31°34'37" E 106.30 feet;
thence N 39°11'43" E 34.57 feet;
thence N 29°59'38" E 64.06 feet;
thence N 21°19'55" E 83.26' feet;
thence.N 25°42'19" E 81.91 feet;
thence N. 19°10'30" E 72.17 feet;
thence N 01°50'31" W 48.86 feet;
thence N 02°18'19" E 88.67 feet;
thence leaving said roadway centerline on a course bearing S 63°15'20" E for 143.03 feet;
thence S 85°07'15" E 181.11 feet;
thence N 63°25'04" E 156.14 feet;
thence S 65°10'01" E 887.76 feet;
thence South 1348.24 feet;
thence N 59°48'31" W 1161.96 feet to a road intersection as built;
thence S 85°01'19" W 667.80 feet;
thence S 72°49'03" W 80.00 feet;
thence N 17°10'57" W 267.15 feet;
thence N 72°49'03" E 80.00 feet to the point of beginning.

TOGETHER WITH

PARCEL D:

ACCESS EASEMENT (CLEVEHOLM MANOR PARCEL TO REDSTONE BOULEVARD)

A 30 foot wide access easement situated in the NW1/4 SE1/4 and in

the E1/2 SW1/4 of Section 20, Township 10 South, Range 88 West of the 6th Principal Meridian, Pitkin County, Colorado, and lying 15 feet on each side of the following described centerline:

Beginning at a point whence a stone found in place for the Witness Corner to the Southwest Corner of said Section 20 bears S 78°33'34" W 2278.67 feet;
thence N 15°12'47" W 25.64 feet;
thence N 19°15'22" W 53.09 feet;
thence N 12°28'46" W 39.19 feet;
thence N 09°56'28" W 106.16 feet;
thence N 07°05'31" W 25.92 feet;
thence N 13°31'54" E 26.10 feet;
thence N 36°17'41" E 50.08 feet;
thence N 26°35'38" E 50.35 feet;
thence N 15021148" E 35.29 feet;
thence N 10°13'11" E 80.34 feet;
thence N 05°41'34" W 92.25 feet;
thence N 03°37'15" W 63.37 feet;
thence N 21°38'48" E 162.46 feet;

thence N 31°34'37" E 106.30 feet;
thence N 39°11'43" E 34.57 feet;
thence N 29°59'38" E 64.06 feet;
thence N 21°19'55" E 83.26 feet;
thence N 25°42'19" E 81.91 feet;
thence N 19°10'30" E 72.17 feet;
thence N 01°03'52" W 231.13 feet;
thence 117.84 feet along the arc of a curve to the right, having a radius of. 112.29 feet, the chord of which bears N 29°00'04" E 112.51 feet; and continuing on the existing 30 foot wide access easement previously recorded as described to wit:

Beginning at a point in the NW1/4 SE1/4 of said Section 20 whence a stone found in place and properly marked for the Witness Point to the Southwest Corner of said Section 20 bears: S 52°53'19" W 3224.57 feet;
thence along said centerline, N 59°04'01" E 187.16 feet;
thence 136.84 feet along the arc of a curve to the left, having a' radius of 263.57 feet, the chord of which bears N 44°11'35" E, 135.31 feet;
thence N 29019110" E 372.52 feet;
thence 139.58 feet along the arc of a curve to the right, having a radius of 740.33 feet, the chord of which bears: N 34°043'15" E 139.38 feet;

thence N 40007.20" E 183.61 feet;
thence 191.24 feet along the arc of a curve to the left, having a radius of 264.95 feet, the chord of which bears: N 19°26.41" E 187.12 feet;
thence N O1°13'59" W 135.97 feet;
thence 290.76 feet along the arc of a curve to the left, having a radius of 479.72 feet, the chord of which bears: N 18°35'49" W 286.33 feet;
thence N 35°57'37" W 183.53 feet;
thence 291.64 feet along the arc of a curve to the right, having the radius of 505.69 feet, the chord of which bears: N 19°26'23" W 287.61 feet;
thence N 02°55'00" W 203.00 feet;
thence 149.57 feet along the arc of a curve to the left, having a, radius of 809.76 feet, the chord of which bears: N 08°12'30" W 149.36 feet;
thence N 13°30'00" W 8.07 feet, more or less, to a point on the Southerly right-of-way line of the Redstone Road.